IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

STEPHANIE BENNEFIELD,

    Plaintiff,

v.

MID-VALLEY HEALTHCARE, INC. AND MID-VALLEY HEALTHCARE, INC. DBA SAMARITAN LEBANON COMMUNITY HOSPITAL,

    Defendants.

Case No. 6:13-cv-00252-MC

OPINION AND ORDER

MCSHANE, Judge:

    Plaintiff Stephanie Bennefield brings 10 state and federal claims alleging discrimination and retaliation for complaints of discrimination based on sexual orientation and religion. Bennefield brings a related whistleblowing claim under ORS 659A.199(1). Bennefield agrees to voluntarily dismiss her federal sexual orientation discrimination claim, the wrongful termination claim, and the claim for punitive damages. As discussed at oral argument, defendant's motion for summary judgment on the religious discrimination and retaliation based on complaints of

1 – OPINION AND ORDER

religious discrimination claims is GRANTED. Defendants' motion for summary judgment on the remaining claims is DENIED.

## BACKGROUND[1]

Bennefield began working at the Hospital on May 2, 2011 on a 6-month probationary period. Bennefield told many co-workers, including her supervisors, that she was a lesbian. Bennefield alleges Linda Pitts, a co-worker, created a hostile work environment after Pitts found out Bennefield was a lesbian. Pitts found out Bennefield was a lesbian in early August 2011. Prior to that time, Pitts treated Bennefield respectfully.

Most of the disagreements between Pitts and Bennefield occurred in the operating room, when Bennefield would ask for a "count" of gauze and tools. Pitts would tell Bennefield to "pull your god damn head out of your ass," and say no count was needed at that time. Pitts called Bennefield a "disgusting lesbian" and a "stupid lesbian" and generally created a hostile work environment. Sometimes, Bennefield would simply walk out of the operating room after Pitts yelled at her. At times, Pitts would purposefully arrive late to the operating room, knowing this would cause Bennefield to be unfairly disciplined.

Bennefield alleges she complained to the supervisors on numerous occasions. As the supervisors all state Bennefield never complained of discrimination (until after the decision had been made to fire Bennefield), his is a classic he-said, she-said situation. Bennefield's declarations are not all that clear on when or who she complained to, or what exactly she said. But she does state she complained to the supervisors, stated Pitts began acting differently after finding out she was a lesbian, and that the supervisors basically told Bennefield to work it out with Pitts. Bennefield worked under two preceptors, who shadowed and trained Bennefield. Bennefield states she told both preceptors of the discrimination, but the preceptors failed to act.

---

[1] I view the facts in the light most favorable to Bennefield, the non-moving party.

2 – OPINION AND ORDER

Bennefield also states she told Charleney Hayden, the nurse manager of the discrimination. Hayden allegedly also failed to address the hostile work environment.

On October 27, at the end of the probationary period, Hayden and a precept met with Bennefield and informed her she was deficient in every category. They extended the probation period another 30 days. Bennefield states this meeting came as a surprise, as her precepts and supervisor had previously said Bennefield was proceeding at an acceptable level.

During a November 16 operation, Bennefield again asked Pitts for a count. Pitts refused and yelled at Bennefield. When the precept then asked for a count, Pitts obliged. Humiliated, Bennefield walked out of the operating room. The precept went to Hayden, who made the decision to terminate Bennefield's employment. Hayden asked Human Resources to prepare Bennefield's check in advance of a November 18 meeting where Hayden would fire Bennefield.

On November 17, Bennefield had another blow up with Pitts during a C-section. Bennefield went to Human Resources and filed a complaint alleging discrimination based on religion and sexual orientation. Defendants say this report was the first time they any supervisor or manager heard any allegations of discrimination against Bennefield. As noted, Bennefield states she made informal complaints to the supervisors for months.

Bennefield was placed on paid leave while Human Resources investigated the complaint. Pitts, who was on vacation, was not placed on leave. Bennefield states the investigation was a sham, and defendants never even asked Pitts about the complaints. Pitts was later disciplined for generally being rude, although defendants concluded Pitts had not engaged in any form of discrimination against Bennefield. Bennefield was fired on November 30.

3 – OPINION AND ORDER

## STANDARD OF REVIEW

The court must grant summary judgment if there is no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party. *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.* The court reviews evidence and draws inferences in the light most favorable to the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999))

## DISCUSSION

**Retaliation for Complaining of Sexual Orientation Harassment**

Title VII prohibits an employer to retaliate against an employee "because he has opposed any practice made an unlawful practice by this subchapter . . . ." 42 U.S.C. § 2000e-3(a). Although Title VII does not prohibit harassment based on one's sexual orientation, Bennefield argues her retaliation claim is viable because she had an objectively reasonable belief that the sexual orientation harassment was unlawful when she complained to her supervisors.

To establish a retaliation claim, Bennefield must establish: 1) she engaged in a protected activity; 2) she suffered a materially adverse action; and 3) a causal relationship between the two. *Westendorf v. W. Coast Contractors of Nev., Inc.*, 712 F.3d 417, 421 (9th Cir. 2013). An employee engages in a protected activity when the employee reports an employment practice that violates Title VII or a practice the employee reasonably believes violates Title VII. A materially adverse action is any action which would deter a reasonable employee from reporting a charge of discrimination. *Emeldi v. Univ. of Oregon*, 698 F.3d 715, 726 (9th Cir. 2012).

4 – OPINION AND ORDER

If the employee establishes a *prima facie* claim of retaliation, the burden shifts to the employer to demonstrate it had legitimate, non-discriminatory reasons for the adverse employment action. *Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1066 (9th Cir. 2003). If the employer meets that burden, the burden then shifts back to the employee to demonstrate the employer's proffered reason was merely pretextual. *Id.*

Defendants point to *Fox v. Shinseki*, 2013 WL 4034086 (N.D. Cal.), which concerned a somewhat similar fact pattern. In *Fox*, the plaintiff complained of comments that a co-worker, being from the south, must be a redneck or racist. The court noted Title VII prohibits national origin discrimination, not regional origin discrimination, and that "Southern-ness is not a protected trait." *Id.* at *7 (quoting *Williams v. Frank*, 757 F. Supp. 112, 120 (D. Mass. 1991). The plaintiff also complained of potential homophobic comments, but the court noted Title VII does not prohibit discrimination on the basis of sexual orientation alone. Therefore, no rational jury could conclude Fox had a reasonable belief that the co-worker's comments violated Title VII and Fox had not engaged in a protected activity. *Id.* The court stated:

> Even if Plaintiff thought she was engaging in protected EEO activity, no rational jury could find that Plaintiff had a reasonable belief that TK's actions violated Title VII. It does not matter that Williams or Plaintiff's supervisors may have held the subjective, mistaken belief that sexual orientation is protected. Rather the issue of "reasonableness" depends on the objective standard of whether the conduct at issue targeted a member of a class covered by Title VII based on that statute. A plaintiff might be able to maintain a retaliation claim where she opposed conduct that she reasonably believed was based on membership in a class actually protected by Title VII, such as harassment based on gender, but was mistaken because the conduct was not sufficiently pervasive. A plaintiff cannot pursue a claim of retaliation, however, where the conduct opposed cannot violated Title VII because it does not involve a class within the protection of the statute. Accordingly, Plaintiff has not raised a triable issue that she engaged in a protected activity.

*Id.*

5 – OPINION AND ORDER

Defendants, and the court in *Fox,* appear to conclude that mistakes of law cannot support a Title VII retaliation claim. I think that argument goes too far. An employee may bring a retaliation claim even if the employee makes a mistake of law in thinking the employer engaged in prohibited conduct. *Moyo v. Gomez*, 40 F.3d 982, 985 (9th Cir. 1994). Whether the error is one of fact or law is irrelevant, as long as the mistake is made in good faith. *Id.* (citing *Jurado v. Eleven-Fifty Corp.*, 813 F.2d 1406, 1411 (9th Cir. 1987). Title VII is construed broadly, and "[t]his directive applies to the reasonableness of a plaintiff's belief that a violation occurred, as well as to other matters." *Id.* at 985. Although the reasonableness prong is an objective standard, courts must take into account "the limited knowledge possessed by most Title VII plaintiffs about the factual and legal bases of their claims." *Id.*

In *Jurado*, the plaintiff, who worked as a disc jockey, opposed his employer's directive that he broadcast only in English. The court noted that although an English only directive would not in fact violate Title VII, a plaintiff's reasonable belief that the order violated Title VII was a protected activity. *Jurado*, 813 F.2d at 1411. Additionally, the Ninth Circuit has held that a plaintiff established a *prima facie* sexual orientation retaliation claim under Title VII and Oregon law because by going to Human Resources and filing a complaint of sexual orientation discrimination, the plaintiff had in fact engaged in a protected activity. *See Dawson v. Entek Intern.* 630 F.3d 928, 936-37 (9th Cir. 2011). Admittedly, the discussion was brief on this issue, and Bennefield did not go to Human Resources until after Hayden made the decision to terminate her employment. However, Bennefield states she reported the discrimination for months to Hayden, her supervisor. Viewing the evidence in the light most favorable to Bennefield, I conclude Bennefield's months of complaints about Pitts's discrimination based on Bennefield's sexual orientation was a protected activity under Title VII. That discrimination

based on one's sexual orientation turned out to not be prohibited under Title VII does not make Bennefield's belief objectively unreasonable. In making this conclusion, I take into account "the limited knowledge possessed by most Title VII plaintiffs about the factual and legal bases of their claims." *Moyo*, 40 F.3d at 985.

Defendants argue Bennefield cannot demonstrate causation here. I disagree. As noted, Bennefield states she complained for months to her supervisors, who failed to act. A jury could find, for example, that Hayden simply did not want to deal with an employee like Bennefield who made complaints. Hayden ultimately made the decision to terminate Bennefield. A jury could also conclude defendants' negligence in allowing the hostile work environment to continue was the reason Bennefield's performance suffered. Additionally, Bennefield disputes the notion that she was not a model employee, essentially arguing her supervisors made up bogus violations and deficiencies on her part. For example, in early October, Bennefield was on-call during the weekend. Bennefield never received any calls due to a defective pager provided by defendants. Hayden nonetheless wrote Bennefield up for not checking in during the weekend. Viewed in the light most favorable to Bennefield, she has met her burden of demonstrating defendants' proffered reasons for firing her were pretextual.

**Religious Discrimination**

Bennefield brings state and federal claims of religious discrimination. The extent of Bennefield's evidence supporting this claim stems from a couple of comments allegedly made by Pitts such as "You really need to find god" and "If you would just find god you wouldn't have this disgusting problem." Pitts made these comments after overhearing a discussion between Bennefield and an anesthesiologist where the anesthesiologist told Bennefield his ex-wife was very religious. Pitts then asked Bennefield what her religion was. Bennefield testified she stated

"I do not talk about religion or politics at work." Bennefield Depo., 180, 21-22. Additionally Bennefield testified she never discussed her religion with the anesthesiologist and it was simply him venting. Bennefield Depo., 181, 1-4 ("I don't know if it was more of a vent, but it did not include me giving my preferences or my opinions or ideas."). In other words, Bennefield argues that despite merely telling Pitts she would not discuss religion at all, Pitts must have assumed Bennefield did not practice a religion. This scant evidence does not support a claim of religious discrimination.

Bennefield points to no case holding a defendant discriminated based on religion despite not knowing plaintiff's religion, or even knowing if plaintiff holds any religious beliefs at all. In *Prowel v. Wise Business Forms, Inc.*, 579 F.3d 285, 292-93 (3rd Cir. 2009), the Third Circuit concluded the plaintiff could not demonstrate his employer intentionally harassed him because of his religion. Prowel testified he suffered religious harassment because "I am a gay male, which status several of my co-workers considered to be contrary to being a good Christian." *Id.* at 293. The court rejected this theory as Prowel's religious discrimination claim was in fact a repackaged gender stereotyping claim.[2] *Id.* ("By contrast, Prowel's religious harassment claim is based entirely upon his status as a gay man. Because Prowel's claim was a repackaged claim for sexual orientation discrimination—which is not cognizable under Title VII—we hold that the District Court did not err in granting Wise summary judgment on that claim.").

---

[2] A "gender stereotyping" is available under Title VII. Prowel specifically brought that claim, which is based on failing to conform to traditional gender stereotypes. It is different that a sexual orientation claim, which is what Bennefield brings. Prowel did not focus on his sexual orientation, instead alleging he did things different than other male employees. *See Prowel*, 579 F.3d at 291-92 (Prowel testified he: "did not curse and was very well-groomed; filed his nails instead of ripping them off with a utility knife; crossed his legs and had a tendency to shake his foot 'the way a woman would sit.';" discussed art and interior design; pushed the buttons on his machine with "pizzazz"; etc...). Bennefield does not make similar allegations, testified Pitts had a problem with her sexual orientation, and reported to her supervisors that Pitts was creating a hostile work environment not because Bennefield failed to conform to traditional female roles, but because she was a lesbian.

8 – OPINION AND ORDER

This is a case centered around alleged discrimination based on Bennefield's sexual orientation. Her claim of religious discrimination, based on a single comment where she simply refused to discuss religion at work, is merely a repackaged claim for sexual orientation discrimination.

**Retaliation for Complaining of Religious Discrimination**

As explained in the sexual orientation retaliation section above, Bennefield must establish: 1) she engaged in a protected activity; 2) she suffered a materially adverse action; and 3) a causal relationship between the two. *Westendorf*, 712 F.3d at 421. An employee engages in a protected activity when the employee reports an employment practice that violates Title VII or that the employee reasonably believes violates Title VII. A materially adverse action is any action which would deter a reasonable employee from reporting a charge of discrimination. *Emeldi*, 698 F.3d at 726.

Based on Bennefield's own testimony, she clearly lacked a good faith belief that Pitts was discriminating against her based on religion. Bennefield testified that when she spoke to Hayden in November about the religious comments, she said "When I did talk to her, I - - I had told her about the religious comment and how I really do feel all this has to do with the sexual orientation because she has referenced me as disgusting lesbian, called me stupid, stupid lesbian, idiot, what I do is disgusting." Bennefield Depo., 183, 2-6. Bennefield's own testimony demonstrates even she believed this all boiled down to sexual orientation discrimination, and not discrimination based on her religious beliefs.

**Whistleblowing Claim**

ORS 659A.199(1) states, "It is an unlawful employment practice for an employer to discharge, demote, suspend or in any manner discriminate or retaliate against an employee . . .

9 – OPINION AND ORDER

for the reason that the employee has in good faith reported information that the employee believes is evidence of a violation of a state or federal law, rule or regulation." The Hospital argues this claim is duplicative of the retaliation claims and must be dismissed. Although Bennefield is not entitled to double recovery, the statute specifically states the whistleblowing statue remedies "are in addition to any common law remedy or other remedy that may be available to an employee for the conduct constituting a violation of this section." ORS 659A199(2).

The analysis for the whistleblowing statute mirrors the analysis for the retaliation based on complaints of sexual orientation discrimination claims. *Neighorn v. Quest Health Care*, 870 F.Supp.2d 1069, 1102 (D. Or. 2012); *DeSpain v. Evergreen Intern. Aviation, Inc.*, 2013 WL 594898 *3-4 (D. Or. 2013). As the sexual orientation retaliation claims survive summary judgment, so does the whistleblowing claim.[3]

## CONCLUSION

Defendants' motion for partial summary judgment (ECF No. 114) is GRANTED in part. Summary judgment is granted as to plaintiff's claims of religious discrimination and retaliation based on complaints of religious discrimination.

IT IS SO ORDERED.

DATED this 21 day of August, 2014.

Michael McShane
United States District Judge

---

[3] At oral argument, Bennefield agreed to dismiss any whistleblowing claim based on reports defendants were violating nursing regulations or that she was in danger of losing her license.

10 – OPINION AND ORDER